# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7456 | **DATE** | 5/6/2003 |
| **CASE TITLE** | Federal Trade Commission vs. 1492828 Ontario, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court denies Defendant's motion to dismiss due to lack of personal jurisdiction. Defendant Anderson was properly served and this Court will assert personal jurisdiction over him in this case.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 42 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>1492828 ONTARIO INC., d/b/a FIRST )<br>CAPITAL CONSUMERS GROUP, )<br>US GUARDIAN UNITED CONSUMERS, )<br>TRANS AMERICA UNITED BENEFITS )<br>GROUP, TRANSGLOBAL NATIONAL )<br>CONSUMERS GROUP, and FIRST )<br>GUARDIAN NATIONAL BENEFITS, )<br>)<br>DAVID DALGLISH, )<br>)<br>LESLIE ANDERSON, )<br>)<br>LLOYD PRUDENZA, )<br>)<br>MARK LENNOX, )<br>)<br>)<br>Defendants. ) | No. 02 C 7456<br>Judge Ronald A. Guzman<br><br>DOCKETED<br>MAY 0 7 2003 |

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Leslie Anderson's Rule 12(b)(2) Motion to Dismiss Due to Lack of Personal Jurisdiction. For the reasons set forth in this Memorandum Opinion and Order, Defendant's motion is denied.

1

**FACTS**

Defendant Anderson is a 50% owner and self-described president of First Capital, a closely-held corporation incorporated in Ontario, Canada on September 14th, 2001. (Pl.'s Response Attachment B 2). Upon suspicion of fraud (Def.'s Motion. 4), the United States Federal Trade Commission turned its attention to certain telemarketing methods employed by First Capital. (Pl.'s Response 6). FTC Investigator Alan Krause was assigned to inspect First Capital's business practices. (Pl.'s Response Attachment B 1). Sometime thereafter, the FTC elected to charge the associates of First Capital with various offenses involving a fraudulent telemarketing scheme. (Pl.'s Compl.).

On October 21, 2002, Defendant was arrested and charged with the offenses. (Def.'s Affidavit 3). Mr. Krause and Ms. Helen Czerniak, an investigator with the Ontario Ministry of Business and Consumer Services, approached Defendant while he was being held under arrest at 53 Division of the Toronto Police Services. (Pl.'s Response Attachment B 6). Ms. Czerniak handed Defendant his summons and complaint, which he accepted. (Def.'s Affidavit 3; Pl.'s Response Attachment B 6). The papers were subsequently taken away from Defendant because the size of the stack rendered them a potential weapon. (Pl.'s Response Attachment B 6). The summons and complaint were placed in his property bag at the jail along with his personal items (Pl.'s Response Attachment B 6), and the rest of the court documents remained with Mr. Krause and Ms. Czerniak. (Pl.'s Response Attachment B 6). Some time thereafter Gordon Goldman, who introduced himself as the attorney for the First Capital defendants, accepted the papers on Anderson's behalf. (Pl.'s Response Attachment B 7). In the days that followed Defendant retained the services of the firm Schuyler, Roche &

2

Zwirner, who apparently received the service of process from Goldman. (Def.'s Affidavit 4). Defendant alleges the summons and complaint were never received by him or his lawyers. (Def.'s Affidavit 4). The summons and complaint remained, according to Plaintiff, in the defendant's personal property bag. (Pl.'s Response Attachment B 7).

Defendant first asserts that he was not properly served under the Hague Convention and Ontario law. (Def.'s Motion 1-4). Second, he claims that as a passive investor he does not have the requisite business contacts to anticipate being tried in a United States court. (Def.'s Motion 4).

## DISCUSSION

The burden of proving personal jurisdiction "lies with the party invoking the federal forum." *Stuart-James Company v. Rossini*, 736 F. Supp. 800, 805 (N.D. Ill. 1990). However, in order to defeat this motion to dismiss, the court "must construe all facts concerning jurisdiction, including factual disputes, in favor of the plaintiff." *F. McConnell and Sons v. Target Data Systems*, 84 F.Supp.2d 961, 966 (N.D. Ind. 1999) (citing *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir. 1984)). Any conflicting evidence will therefore be resolved in support of the FTC. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

### I. Service by a Canadian Official was Proper

Defendant Anderson claims that service of process was improper, due to lack of service by the appropriate authority and failure to include the correct documents. (Def.'s Motion). Rule 4(f) of the Federal Rules of Civil Procedure provides that when a person outside the United States is to be served, that process may be accomplished "by any internationally agreed upon means reasonably calculated to give notice, such as those

3

authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." 28 U.S.C.A. Fed.R.Civ.P. 4 (f) (1992) (herein after "Convention"). This Convention, of which both Canada and the United States are signatories, provides a uniform method of service of process for foreign defendants.

Defendant first claims that the Convention mandates service through a "Central Authority", which in this matter would be the Ministry of the Attorney General for Ontario. Helen Czerniak, an investigator for the Ontario Ministry of Consumer and Business Services, was admittedly not such an 'authority'. Defendant, however, is erroneous in his narrow reading of the Convention. Article 10 of the Convention provides that "judicial officers, officials, or other competent persons of the State of destination" may serve a summons, "[p]rovided the State of destination does not object." Article 10 (b). Ms. Czerniak, as a government employee of the MCBS, is certainly an official. Canada, when approving the Convention, "has not declared to object to methods of service of Article 10, sub-paragraphs b) and c)." Annex to the Convention, Canada I-II. "Canada's internal laws themselves are flexible about who is authorized to affect service of process. The laws of Ontario governing service of process do not proscribe government officials or even private persons from effecting service of process." *U.S. v. Islip*, 18 F.Supp.2d 1047, 1057 (CIT 1998).

Furthermore, assuming Ms. Czerniak is not a qualified official under the Convention, she is certainly a "competent person". Neither the Convention nor Ontario law defines competency in the context of service of process. However, the United States Court of International Trade defines "competent" as "any person who is not a party and who is at least 18 years of age." USCIT Rule 4(c). In *Islip*, the Court of International

4

Trade applied this rule to find that a Canadian customs investigator properly served an Ontario defendant with a United States summons. 18 F.Supp. 2d at 1057. Taking an expansive view of Canadian law, and considering United States precedent, Ms. Czerniak would be "competent" by virtue of being over the age of 18 and not a party to Defendant's case.

Defendant's claim of insufficient service of process must fail for several reasons. First, Canada did not raise an objection to the procedure in question; in fact, the government specifically authorized this method of process when consenting to the Convention. Second, the service was in full compliance of the laws of the State of Ontario, of which Defendant is a resident. See Consolidated Regulations of Ontario, R.R.O. 1990, Reg. 194, §16.02 (Service of Documents – Personal Service). Third, Helen Czerniak, as an adult over the age of 18 and a government-employed investigator not affiliated with this case, was competent and qualified to serve Defendant with his court papers. Ontario law permits service by government officials and even private persons. *U.S. v. Islip*, 18 F.Supp.2d 1047, 1057. The Convention was intended to provide a consistent and standardized procedure for service of process across borders, and to "simplify and expedite the procedure." Convention, Fed.R.Civ.P. Rule 4(f). The purpose of that agreement was not circumvented here. Defendant was served by a competent official; the process was efficient and effective; thus service was proper and in full compliance with the Hague Convention's rules.

Defendant next claims that he did not receive all the required papers for proper service, including the summons or complaint. (Def.'s Affidavit 4). Ms. Czerniak has attested, and Mr. Krause maintains, that the paperwork was complete and placed with

5

Defendant's personal items at the jail. (Pl.'s Response 3). "The allegations in [plaintiff's] complaint are to be taken as true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are to be resolved in [plaintiff's] favor." *Turnock*, 816 F.2d at 333 (citing *O'Hare Intern Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971)). Therefore, this Court must assume that the summons and complaint were properly placed in Defendant's possession by process server Ms. Czerniak.

Defendant also asserts the served paperwork lacked a "Summary of the Document to be Served" in compliance with the Hague Convention Article 5 (Def.'s Motion 3). Defendant claims that in the accompanying "Rider to Summons", which listed additional documents served on him, "conspicuous by its absence is any indication that Anderson was served with the Summary." (Def.'s Motion 3, Exhibit B). The Convention does not provide a definition of "summary" in Article 5 or elsewhere. Neither does Canada define the item in its acceptance of the Convention. *Annex to the Convention*, Canada I-II. In addition, United States law makes no reference to any type of summary necessary in a service of process, foreign or otherwise.

Although there is no document precisely labeled "Summary of the Document to be Served", this court will assume, absent further information, that the "Rider to the Summons" served as the summary. The Rider contained a list of thirteen additional documents with their official names. It is difficult to think of another way to summarize a set of documents than to list its contents. Defendant has not put forth any examples of what he would consider a summary, or how it is defined in the Convention or Canadian law.

Furthermore, defendant has not shown how his lack of a "summary" prejudiced him in any way. The Eighth Circuit addressed this matter in *Northrup King v. C.O.P.S.A.*, 51 F.3d 1383, 1390 (8th Cir. 1995), where the defendant, a Spanish corporation, claimed the process server failed to include the "Summary" with its United States summons. In holding that service of process was proper, the court remarked that the defendant had made no showing that the lack of a summary prejudiced it in any way. *Id.* Because a suitable summary seems to have been included under the title "Rider to the Summons", and Defendant has shown no injustice, this court will not grant his motion because of failure to receive a document specifically labeled "Summary of the Documents to be Served."

## II. This Court has Jurisdiction over Defendant

Defendant next asserts that he lacks the proper contacts with the United States to be subject to personal jurisdiction in this Court. (Def.'s Motion 4). As a "passive investor" in First Capital (Def.'s Motion 4), he did not have knowledge of the corporation's dealings. He claims his participation in First Capital was "minimal at most" and any business activities he did perform took place entirely within the Toronto area. (Def.'s Motion 6). In fact, Defendant claims almost no connection with First Capital whatsoever. Under the tests set forth by the United States Supreme Court, Defendant asserts he did not "purposefully establish 'minimum contacts' in the forum state." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *International Shoe*, 326 U.S. 310, 316 (1945)).

Under the Supreme Court test set out in *International Shoe*, a nonresident defendant must first have "minimum contacts with [the forum] such that the maintenance

of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316 (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)). Second, the defendant "should reasonably anticipate being haled into court [in the forum State]," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), if he "purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475.

Defendant's argument that he lacks "minimum contacts" is belied by his activities as a director of First Capital. His name appears on several key corporate documents, including the company's Articles of Incorporation (Krause Att. B), in files from the Ministry of Consumer and Commercial Relations in Ontario (Krause Att. B), on company checks and bank accounts (Krause Att. C), and on company credit cards (Krause Att. D). Defendant also wrote many checks on First Capital's behalf (Krause Att. J). On several of these documents, Defendant is listed as the President of First Capital.

It is hard to imagine that a "passive investor" would take on so many duties and responsibilities of a corporation, as Defendant appears to have done. He claims to have invested in a business run by David Daglish (Def.'s Motion 6), yet he listed himself, and signed his name, as President (Krause Att. C). He claims to be "not sophisticated with respect to the functions or duties of corporate officers or directors" (Def.'s Motion 6), yet his name appears on significant financial documents with regard to First Capital. Defendant no doubt knew, or should have known, the business in which First Capital was engaged. The corporation was doing business in the United States, and thus its managing

directors should have reasonably expected to be subject to potential litigation here. *Burger King*, 471 U.S. at 474-475. Furthermore, Defendant "purposefully availed" himself of the United States, in particular this court's jurisdiction. *Id.* Numerous United States citizens have declared that First Capital approached them with an offer to do business. (Pl.'s Compl.) No less than five "customers" of First Capital reside within the Northern District of Illinois. (Pl.'s Compl.) Defendant no doubt knew that his corporation was soliciting American customers, and could have anticipated litigation in an American court. Defendant has the minimum contacts necessary to bring him within this court's jurisdiction.

Defendant also argues that the United States should not seek to prosecute him while he is currently subject to criminal proceedings in Canadian court. (Def.'s Motion 7). Defendant cites *Asahi Metal Industry Co. Ltd. v. Superior Court of California*, 480 U.S. 102 (1987), to contend that a person who must defend himself in a foreign legal system has increased burdens. The *Asahi* court remarked that a court should exercise great care when assessing whether to bring that person under United States jurisdiction. *Id.* The court held that to subject a Japanese corporation to proceedings in California, when the corporation had minimum contacts in the state, would be unreasonable and unfair. *Id.* at 114. Furthermore, the plaintiff in *Asahi* was not a resident of the state of California, which "diminished" the state's interest in the case. *Id.*

The Court fails to grasp the exact nature of Defendant's argument. The facts in *Asahi* had nothing to do with assessing the importance of criminal versus civil proceedings. Moreover, Defendant lives in Toronto, which is but a one to two hour flight from Chicago – not the distance from Japan to the United States, as was the case in

*Asahi. Id.* To subject a corporation's directors to litigation here, with respect to solicitation of United States customers, is not unreasonable or unfair. Finally, the *Asahi* court questioned the need for *nonresident* plaintiffs to bring a case against an international corporation in California *state* court. *Id.* The plaintiff in this matter is an agency of the United States Government and has full right to bring this case in a federal court.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to dismiss due to lack of personal jurisdiction. Defendant Anderson was properly served and this Court will assert personal jurisdiction over him in this case.

SO ORDERED                    ENTERED: 5/6/03

*[signature]*
HON. RONALD A. GUZMÁN
United States Judge